IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN E. RILEY,

    Plaintiff,                     No. CIV S-06-0765 GEB GGH P

    vs.

C.A. TERHUNE, et al.,

    Defendants,               FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

    Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court are defendants' motion for summary judgment, filed on October 1, 2008, to which plaintiff filed his opposition on October 27, 2008.

II. Complaint

    This case is proceeding on the original complaint, filed on April 10, 2006. Plaintiff names 6 (six) defendants who were employed at Calipatria State Prison during the relevant time.[1] Complaint (Compl.) at 3.

\\\\\

---

[1] One defendant was previously dismissed pursuant to court order on September 27, 2007.

1

1  Plaintiff alleges that defendants violated his civil rights and that he was the victim of religious persecution due to his receiving rule violations for his long hair in violation of prison regulations. As a result of several rule violations, plaintiff was placed on different status that resulted in the confiscation of several of his electric appliances. Defendants correctly note in their motion for summary judgment that plaintiff does not plead a specific cause of action, which makes it difficult to address his claims. In addition, plaintiff's only reference to his religion is that he is a, "practitioner of ancient Egyptian religion, which demands that he wear long dread locks in his hair." Compl. at 5. Plaintiff provides no other details.[2] Nevertheless, the court will address plaintiff's claims as a violation of the First Amendment right to free exercise of religion and the Religious Land Use and Institutionalized Persons Act of 2000.

III. Motion for Summary Judgment

Defendants move for summary judgment on the ground that plaintiff has not established that any of the defendants violated an established constitutional right and defendants are entitled to qualified immunity based on their good faith enforcement of a valid prison regulation. MSJ at 1.

Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Fed. R. Civ. P. 56(c) is met. "The judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

---

[2] Plaintiff's only response to the motion for summary judgment was a two page denial and admittance of defendants' statement of undisputed facts.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255, 106 S. Ct. at 2513. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1356 (citation omitted).

IV. Undisputed Facts

The following of defendants' undisputed facts (DUF) are either not disputed by plaintiff, or following the court's review of the evidence submitted, have been deemed undisputed. Plaintiff was an inmate at Calipatria State Prison at all relevant times. DUF #1. Prior to January 2006, regulations restricted inmates from growing their hair longer than three inches. DUF #2. From September 1999 to December 1999, plaintiff received several rule violations due to the length of his hair and as punishment was transferred to Group C Status. DUF #3-6. Because plaintiff would not cut his hair he remained in Group C Status until 2006.

DUF #7.  In March 2005, CDCR regulations were changed and prisoners in Group C Status were not allowed to posses any appliances such as televisions, radios or CD players.  DUF #8.  On June 10, 2005, plaintiff was found to be in possession of a television, cassette walkman, digital headphones, a power adapter, a hot pot and a stinger (an immersion heater).  DUF #9.  Pursuant to the regulations correctional staff confiscated these items.  DUF #10.

Items confiscated from an inmate are sent to the inmates family if the inmate has sufficient funds in his trust account.  DUF #12.  If the inmate does not have enough funds, as in this case, the items are disposed of.  DUF #13, 14.

On January 17, 2006, CDCR amended its grooming standards and eliminated the three inch restriction.  DUF #16.  Plaintiff was removed from Group C Status, and placed back on his original A1/A status from 1999.  DUF #16.

V. Disputed Facts

Defendants state that when plaintiff was returned to his original A1/A status in 2006, he did not loose any good time credits.  DUF #16.

Plaintiff disputes these facts and asserts that his classification points were removed.  Plaintiff's Undisputed Material Facts (PUF) #16.

VI. Free Exercise Claim

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison."  Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861 (1979).  However, a prisoner's First Amendment rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security."  McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir.1987).  In particular, a prisoner's constitutional right to free exercise of religion must be balanced against the state's right to limit First Amendment freedoms in order to attain valid penological objectives such as rehabilitation of prisoners, deterrence of crime, and preservation of institutional security.  See O'Lone v. Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987).  "Regulations that impinge on an

inmate's constitutional rights will be upheld only if they are reasonably related to legitimate penological interests." Henderson v. Terhune, 379 F.3d 709, 712 (9th Cir.2004).

In Henderson, a Native American state prisoner brought a § 1983 action, claiming that CDCR's hair-length regulation violated his rights under the First Amendment Free Exercise Clause. Henderson, 379 F.3d at 711. Disagreeing, the Ninth Circuit held that CDCR's hair-length regulation was reasonably related to legitimate penological interests. Id. at 715. The Ninth Circuit explained that there was a clear connection between CDCR's hair regulation and its desire to prevent inmates from quickly changing their appearance after an escape, hiding weapons and contraband in their hair, displaying gang-related hairstyles, and maintaining a safe and clean prison environment. Id. at 713. The court recognized that Henderson's hair length involved a strict religious prohibition but determined that accommodating the inmate's desire to keep his hair long would burden prison guards, other inmates, and prison resources. The court also determined that there were no alternatives to the hair-length policy that could accommodate the inmate's wishes at a de minimis cost to the prison. Id. at 715.

Under Henderson, any First Amendment free exercise claim in plaintiff's petition is foreclosed as a matter of law. The Ninth Circuit clearly held that California's hair-length regulation was reasonably related to legitimate penological interests and that inmates do not have a constitutional right to keep their hair at any length. Henderson, 379 F.3d at 715. Accordingly, plaintiff is not entitled to relief under the First Amendment.

VII. Religious Land Use and Institutionalized Persons Act

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides in part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ..., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.

Plaintiff bears the initial burden of setting forth evidence demonstrating that the grooming standards policy "and its punitive sanctions designed to coerce him to comply with that policy constitute a substantial burden on the exercise of his religious beliefs." Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir.2005). If plaintiff meets his burden, defendants must set forth evidence demonstrating that "any substantial burden of [plaintiff's] exercise of his religious beliefs is both in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest." Id. (emphasis in original). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id.

The grooming standard at issue provided that "[a] male inmate's hair shall not be longer than three inches and shall not extend over the eyebrows or below the top of the shirt collar while standing upright." Cal.Code Regs., tit. 15 § 3062(e) (2006).

The Ninth Circuit held that the CDCR's grooming regulations for male prisoners violated RLUIPA, because the policy was not the least restrictive means to achieve the state's compelling interest in maintaining prison safety and security. See Warsoldier v. Woodford, 418 F.3d 989 (9th Cir. 2005). In response to Warsoldier and other litigation, CDCR made changes to its grooming regulations. The new grooming regulations, in relevant part, allowed an inmate's hair to be any length "but [hair] shall not extend over the eyebrows, cover the inmate's face or pose a health and safety risk." Cal.Code Regs. tit. 15, § 3062(e) (2006).

While RLUIPA could provide an avenue of relief, plaintiff has failed to set forth sufficient evidence that the grooming regulation "constitute[s] a substantial burden on the exercise of his religious beliefs." Warsoldier, 418 F.3d at 994-95.

RLUIPA protects any "religious exercise," including "any exercise of religion, whether or not compelled by or central to, a system of religious belief." Cutter v. Wilkinson, 544 U.S. 709, 715, 125 S.Ct. 2113 (2005) (quoting 42 U.S.C. § 2000cc-5(7)(A)). RLUIPA "bars

inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." Cutter, 544 U.S. at 725 n. 13, 125 S.Ct. 2113; 42 U.S.C. § 2000cc-5(7)(A).

In Greene v. Solano County Jail, 513 F.3d 982 (9th Cir. 2008), the Ninth Circuit reversed and remanded the district court's grant of summary judgment against a maximum security prisoner who was denied the right to group worship in violation of RLUIPA. In that case the prisoner plead specific facts that he desired to worship with others and when he attempted to conducted group worship by yelling to prisoners in other cells, correctional officers forced him to stop. Greene, at 985. The Ninth Circuit held that the religious exercise at issue was group worship. Id. at 988.

Yet, in all of the pleadings in the instant case, petitioner only states that he practices the ancient Egyptian religion that requires long hair. In Greene, there was an arguable burden in being forced to worship alone when one desires to worship with others. In the instant case, this court is unable to discern if the grooming regulation is a substantial burden, as petitioner has provided no details whatsoever concerning his religious beliefs. This court agrees with the holding in Warsoldier that hair can be a necessary aspect of one's religious beliefs, however, plaintiff makes no effort to describe how maintaining short hair burdened his religious beliefs. RLUIPA contains the words "substantial burden" on religious exercise. Courts cannot and should not read those words out of the statute by ignoring them. Plaintiff does raise a material issue of fact with respect to that required substantial burden by relating nothing about that supposed burden. There is no evidence that the CDCR policies pressured petitioner to betray his religious beliefs. Petitioner has failed to meet his burden under RLUIPA, thus defendants are entitled to summary judgment.

VIII. Qualified Immunity

Because the court has found that the conduct alleged by plaintiff does not state a constitutional deprivation, the court will not address the issues of qualified immunity.

\\\\\

1         Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment, filed on October 1, 2008, be granted and plaintiff's complaint be dismissed in its entirety.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 04/01/09

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:AB
rile0765.sj